**TOM LANGE COMPANY, INC.,**
**Plaintiff–Appellant/Cross–Respondent,**

**and**

**Tom Lange, Plaintiff,**

**v.**

**CLEANING BY HOUSE BEAUTIFUL,**
**Defendant–Respondent/Cross–Appellant,**

**and**

**Mark Bernstein, Defendant.**

**Nos. 56703, 56730.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 5, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 11, 1990.

Application to Transfer Denied
Sept. 11, 1990.

Jerome Wallach, St. Louis, for plaintiff-appellant/cross-respondent.

Gordon L. Ankney, James R. Lance, James Carmody, Thompson & Mitchell, St. Louis, for defendant-respondent/cross-appellant.

CRANDALL, Judge.

Plaintiff, Tom Lange Company, Inc. (Lange Co.), instituted an action for replevin of a 1984 BMW 633CSi (BMW) against defendant, Mark Bernstein (Bernstein). Cleaning by House Beautiful (House Beautiful), a company owned by Bernstein and the alleged purchaser of the BMW, filed a third-party action against Lange Co. and Tom Lange (Lange) individually. The trial court made the replevin order permanent. Lange Co. appeals from the judgment in favor of House Beautiful, entered pursuant to a jury verdict, which awarded House Beautiful actual and punitive damages. House Beautiful cross-appeals from the trial court's subsequent reduction of the actual damage award. We reverse the judgment in favor of House Beautiful on its third-party action against Lange Co.

Viewed in the light most favorable to the verdict, the evidence established that in July 1985, Lange purchased a 1979 Rolls Royce for $67,500.00 from Classic Auto Imports (Classic Auto). He arranged with Nicholas Miranda (Miranda), the president of Classic Auto, to accept as a trade-in the BMW which was owned by Lange Co. Because Miranda had financed the Rolls Royce through Mark Twain Bank (Mark Twain), Lange gave Mark Twain $37,500.00 in cash as well as the certificate of title to the BMW. Lange signed the title and instructed Mark Twain that it should release the title to Miranda when Miranda paid the bank $30,000.00.

Miranda placed the BMW in Classic Auto's showroom and advertised it for sale in the newspaper. In October 1985, House Beautiful purchased[1] the automobile from Classic Auto but did not receive title to the BMW at the time of transfer. Miranda assured Bernstein that the title would be forthcoming.

Miranda never paid Mark Twain $30,-000.00 and never acquired title to the BMW. In April 1986, Lange Co. filed an action in replevin against Bernstein individually; and thereafter recovered the BMW from House Beautiful's place of business pursuant to an order of replevin. House Beautiful was then made a party to the replevin action. House Beautiful filed a six count third-party action against Lange and Lange Co. In the third-party action only three counts were submitted to the jury: Count I, which sought damages plus rescission for breach of contract relating to the sale of the BMW; Count III, which sought actual and punitive damages for false misrepresentation; and Count IV, which sought actual and punitive damages for the fraudulent sale of the BMW in violation of Section 301.210(4), RSMo (1986).

The replevin action was tried to the court. The third-party action was tried to a jury. The trial court made the replevin order permanent. On House Beautiful's third-party action, pursuant to a jury verdict in favor of House Beautiful and against Lange Co. only, the trial court awarded actual damages of $25,000.00 each on Counts I, III, and IV and punitive damages of $18,000.00 each on Counts III and IV. After trial, in accordance with Rule 78.08, the court reduced the award of actual damages under Count IV to nominal damages[2] and found that any inconsistency between House Beautiful's recovery under both Count I and Count III was waived by Lange Co.'s failure to object. The court permitted the punitive damages to stand.

1. We use the terms "purchase" and "sale" throughout this opinion to characterize what occurred between Miranda and House Beautiful regarding the BMW. We recognize, however, that no sale of the BMW actually took place because of the parties' failure to comply with Section 301.210(4), RSMo (1986) which requires

that an assigned certificate of ownership pass "at the time of delivery" or else the sale will be rendered "fraudulent and void."

2. In view of our holding in this case, House Beautiful's cross-appeal from the trial court's

In its first point, Lange Co. claims the trial court erred in holding it liable for the actions of Miranda because no agency relationship existed between it and Miranda. The issue of whether Miranda acted as Lange Co.'s agent in the sale of the BMW is the dispositive issue in this case.

■ The existence of an agency relationship is ordinarily a question of fact for the trier of fact. *Tedesco v. Bekker*, 741 S.W.2d 896, 899 (Mo.App.1987). Where there are no conflicts in the evidence, however, the determination of what constitutes agency and whether there is evidence tending to prove the existence of agency is a question of law. *Tri–City Const. v. A.C. Kirkwood & Assoc.*, 738 S.W.2d 925, 931 (Mo.App.1987). Agency is a fiduciary relationship which results from the consent by one person, the principal, to another, the agent, for the agent to act on the principal's behalf and to be subject to the principal's control. Restatement (Second) of Agency Section 1 (1957).

■ The facts of this case are not in dispute. The evidence reveals that Lange Co. gave Mark Twain control over the certificate of title to the BMW with the express understanding that Mark Twain would release the assigned title to Miranda only when Miranda paid the bank $30,000.00. Although Lange Co. entrusted possession of the BMW to Miranda and may have expected Miranda to display the car and to find a purchaser, these facts alone do not justify a finding of an agency relationship. *See Albright v. Uhlig*, 315 S.W.2d 471, 472 (Mo.App.1958). Lange Co. did not retain any right to control Miranda's subsequent conduct regarding the BMW. It was unimportant to Lange Co. whether Miranda either sold the vehicle to another or purchased the vehicle himself. It was equally unimportant what amount, if any, Miranda was paid for the vehicle. *See, e.g., Albright v. Uhlig*, 315 S.W.2d 471 (Mo.App.1958). Lange Co.'s only interest in any future transaction involving Miranda and the BMW was in Mark Twain's being paid $30,000.00. The evidence does not support the inference that Miranda was Lange Co.'s agent in the disposition of the BMW. Miranda's conduct with respect to the BMW was not subject to Lange Co.'s control, an essential attribute of an agency relationship.

■ Rather, Miranda was an independent contractor with regard to the sale of the BMW. An independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other's control with respect to his physical conduct in the performance of the undertaking. Restatement of Agency at Section 2. A principal is generally not responsible for the wrongs committed by the independent contractor. *Ford Motor*, 706 S.W.2d 453 at 460 (Mo. App.1985).

Here, the evidence reveals that Lange Co. left all the details regarding the disposition of the BMW to Miranda. It furnished no instructions to Miranda. It did not keep in touch with Miranda to discover what was happening with respect to the BMW. Lange Co. did not control who purchased the BMW, when it was purchased, or how much Miranda received for the vehicle. It was irrelevant to Lange Co. how Miranda procured the $30,000.00 needed by Miranda to secure legal title to the BMW. Because the evidence clearly indicates that Miranda was an independent contractor in the sale of the BMW, Lange Co. was not liable for the fraud perpetrated by Miranda when he sold the car to House Beautiful. The trial court therefore erred in entering judgment in favor of House Beautiful and against Lange Co. for actual and punitive damages.

House Beautiful would not have lost its money had Bernstein complied with the requirements of Section 301.210(4) and demanded delivery of a duly assigned certificate of title at the time he took delivery of the BMW and before he turned over House Beautiful's money to Miranda. In light of

reduction of damages under Count IV is rendered moot.

872

House Beautiful's failure to receive title at the same time it took possession of the BMW, we reiterate the admonition contained in *Albright:* "Payment of the purchase price without first obtaining an assignment of the certificate of ownership was a payment made at his peril." *Albright,* 315 S.W.2d at 475.

The judgment of the trial court in favor of House Beautiful on its third-party action against Lange Co. is reversed. The cross-appeal of House Beautiful is denied as moot. No claims of error regarding the judgment on the replevin action were raised on appeal. That judgment therefore stands.

PUDLOWSKI, P.J. and KAROHL, J. concur.